[No. 37994.    Department Two.    September 1, 1966.]

THE STATE OF WASHINGTON, *Respondent,* v. FRED JOHANSEN, *Appellant.**

*Samuel W. Fancher,* for appellant.

*Lincoln E. Shropshire, Charles O. Shoemaker, Jr.,* and *Walter B. Dauber,* for respondent.

DONWORTH, J.—Appellant was charged with murder in the second degree. After hearing the testimony (including appellant's own testimony concerning the homicide), the jury returned a verdict finding appellant guilty of the included offense of manslaughter. After his post-trial motions were heard and denied, the court sentenced appellant to not more than 20 years' confinement in the state penitentiary.

The sole basis for his appeal from this judgment and sentence is the single assignment of error to the effect that the trial court erred in permitting the trial to con-

*Reported in 417 P.2d 844.

tinue on the original information charging appellant with second-degree murder after an amended information charging him with manslaughter had been filed during the trial. The circumstances surrounding the filing of the amended information are set forth below.

It should be stated that, at the trial, appellant was represented by counsel other than the attorney who is representing him on this appeal.

The details of the homicide need not be stated in this opinion. Appellant admitted shooting and mortally wounding the deceased with a 30-30 rifle while they were alone in appellant's rented cabin. The two men had been acquainted with each other for about five years, and the deceased, who lived in an adjacent cabin, had visited with appellant many times. Appellant's defense was that on this occasion a quarrel, instigated by the deceased, took place and appellant told the deceased to leave his cabin. The deceased refused to leave, made threatening gestures, and called appellant vile names. Appellant testified that he thought that the deceased, who had a quarrelsome disposition and had just told appellant that he was going "to beat the hell" out of him, was going to attack him. Appellant testified that he then shot the deceased in self-defense.

We come now to the matter of the filing of the amended information and the proceedings upon which appellant relies for a reversal of his conviction of manslaughter.

When court convened on the morning of the second day of the trial, appellant's trial counsel, in the absence of the jury but in the presence of appellant, made a lengthy statement in open court. The substance of the statement was that subsequent to adjournment on the previous day the prosecutor had permitted appellant's counsel to listen to a tape-recorded interview between appellant and the prosecuting attorney and his deputy which took place immediately following the homicide. During this interview, appellant had made several damaging admissions such as (1) that the deceased was still sitting in his chair when he was shot, and (2) his answer to the question whether he had intended to shoot the deceased, which was, "Right

square in the middle." Counsel stated that appellant also admitted that there were no actions taken against him by the deceased, but that the threats consisted of verbal statements and reviling epithets which were applied to him.

Appellant's counsel stated that, prior to the convening of court that morning, he had conferred with his client concerning the new development and had advised him that (1) if the tape recording were admitted in evidence, there was grave danger that the jury would think that appellant had intended to kill the deceased, and (2) that there would be no factual basis for his claim of self-defense, and the best appellant could hope for was a verdict of guilty of manslaughter instead of a possible verdict of guilty of second-degree murder. His counsel further told him that the latter would carry a much more severe penalty, and that, if he pleaded guilty to a charge of manslaughter, he would no doubt be sentenced to serve time in the state penitentiary.

At the close of trial counsel's statement in open court, the following occurred:

After having that consultation with him this morning, he now indicates to me he wishes to plead guilty to manslaughter. Have I stated it right, Fred? The defendant: Yes. Mr. Hazel: The procedure, as I understand it, is Mr. Shropshire is now preparing an amended information charging the defendant with manslaughter. The Court: You have heard everything Mr. Hazel has said, Mr. Johansen? The defendant: Yes, Your Honor. The Court: Do I understand you concur in the statement Mr. Hazel has just made? The defendant: Yes. The Court: You do so concur? The defendant: Yes. The Court: How old are you, Mr. Johansen? The defendant: Seventy; be seventy-one in November. November 20th I will be seventy-one years old. The Court: Let the record show that the Court has observed the defendant throughout the day of trial yesterday, observes him this morning, his reactions to the statements that have been made. The Court is convinced that the defendant fully understands and comprehends the situation that now exists before the Court.

The deputy prosecutor then presented an amended in-

formation charging appellant with the crime of manslaughter and stated that appellant was present for arraignment.

Thereupon, the following proceedings took place:

Mr. Johansen, did you hear the reading of the amended information by Mr. Lust? The defendant: Yes, sir. The Court: Mr. Johansen, do you feel you understand the contents of that information? The defendant: Yes, I believe I do. The Court: And you have gone over this matter, as previously stated, with Mr. Hazel, your attorney? The defendant: Yes, sir. The Court: Mr. Johansen, are you now ready to enter a plea to the amended information? Are you ready to do that? The defendant: That is a pretty hard question, Your Honor. I was advised by Mr. Hazel to plead guilty to that charge. I agreed with him that he knew—or would know, probably —what was the best thing for me to plead guilty to that charge. And yet I claimed self-defense by being threatened, and that was not the first time that that happened. That was going on for a period of five years that this same deal has come up. The Court: Well, now, Mr. Johansen, keeping in mind what you have just said to the Court, do you desire to at this time to enter your plea to the amended information? The defendant: Would there be a—Your Honor, would there be any way to appeal this, in case I didn't think I got the legal justice? Would there be a chance to appeal this case? The Court: The Court at this point can tell you this much, Mr. Johansen: That there is no appeal from a plea of guilty. There is from jury verdicts, but other than that, the Court feels that it would give you time to consult with Mr. Hazel, if you desire to have time so to do. Would you desire to have such time? The defendant: Yes, I believe I do.

After a brief recess of 19 minutes, court was reconvened (the jury still being absent), and the matter of the amended information was concluded as follows:

Mr. Shropshire: May the Court please, in this matter, State of Washington versus Fred Johansen, after 9:30 this morning Mr. Harry Hazel, attorney for the defendant, and Mr. Lust and myself met in your office concerning a proposed amendment to the information, reducing the charge from second degree murder to manslaughter. In your chambers the following took place: That I, as prosecutor of Yakima County, agreed that on

a plea of manslaughter we would file an amended information charging the defendant with manslaughter. However, on subsequent development the defendant decided not to plea to this amended information and requested that we go ahead with the trial.

For that reason I am moving that the amended information be withdrawn and we proceed with the trial of the defendant on second degree murder charges.

Mr. Hazel: That is a correct statement in fact. The Court: It is the Court's feeling that this motion should be granted. The Court will consider it later. However, for the moment it will be considered as granted, and we will proceed to trial on the information as originally filed on February 10, 1964.

We will now proceed with trial.

Is there anything else to be taken up in the absence of the jury?

Mr. Hazel: There is only one thing. I notice Mr. Shropshire is withdrawing physically the original amended information. The Court: That, I think, should remain in the Court's records. The Court is treating it as withdrawn and will hear later on this matter from both counsel, but we will proceed to trial.

I take it there is nothing else in the absence of the jury?

Mr. Hazel: No. The Court: You may bring in the jury.

Thereupon, the trial continued on the original information and appellant's plea of not guilty thereto. The state proceeded with the presentation of its evidence (including the introduction of the tape recorder and the tape of the interview above referred to) and, according to the record, no reference was made by anyone to the amended information until after the noon recess.

When court reconvened, appellant's trial counsel (in the absence of the jury) moved that the trial proceed only on the amended information charging manslaughter because its filing superseded the original information charging second-degree murder. Counsel's motion and argument, after referring to his previous statement in open court in the presence of his client earlier that day, stated his motion and argument as follows:

The record also shows that an amended information was prepared, charging manslaughter in this case, was handed to the clerk and the defendant was arraigned on that amended information. After it was read to him, and prior to any plea, he then changed his mind and decided he was not going to plead guilty to it, whereupon the trial proceeded as though this amended information had been withdrawn.

In view of the fact that an amended information has been filed, and despite the fact I am familiar with the facts surrounding its filing, I feel obliged to raise the question at this time, and I do, namely: that the amended information as filed now and upon which the defendant has been arraigned supersedes the original information.

I based this upon a statement contained in *State v. Navonne*, 180 Wash. 2d [*sic*], at Page 121, in which it is stated, in effect, that the filing in the same cause of an amended information against the same defendant manifestly supersedes the original information. And we now insist that this trial, if it is to proceed at all, so far as the defendant is concerned, proceeds only upon the amended information charging manslaughter; and I now so move and advise the Court that at present, at least, I would like a ruling upon that matter now.

After extended argument by counsel, the trial court denied appellant's motion, stating that it found no prejudice to appellant by reason of the above-described proceedings. However, the court granted him a 3-day continuance (from Friday to Tuesday) to enable his counsel to further research the legal problems involved.

When court reconvened on Tuesday morning, appellant's trial counsel made no further reference to the motion which the trial court had denied on the previous Friday, but immediately requested his client to take the stand and testify in his defense.

On this appeal, appellant states his assignment of error in his brief as follows:

The trial should have proceeded only upon the amended information charging the crime of manslaughter or the jury discharged, the manslaughter charge dismissed and a new information should have been filed and a new arraignment should have been given the appellant.

Thereafter, appellant's counsel contended that the amended information, then filed and not yet withdrawn by the court, superseded the original information charging second degree murder. He based his contention on the case of State v. Navone, 180 W. 121. The appellant's attorney insisted that if the trial were to proceed at all, so far as the appellant was concerned, it should proceed only on the amended information charging manslaughter.

Before discussing appellant's argument in support of this assignment, we wish to state that we agree with the trial court in its statement that appellant has not been prejudiced by the denial of his motion. The court, in its 31 instructions (to which no exceptions were taken by appellant), defined the elements of the crime of murder in the second degree and concluded with this statement:

The killing of a human being which is not excusable or justifiable and which does not amount to murder in the second degree as hereinabove defined, is manslaughter.

The jury returned a verdict of guilty of manslaughter. This verdict was, in effect, one of *not* guilty of murder in the second degree. *State v. Schoel,* 54 Wn.2d 388, 341 P.2d 481 (1959); *State v. Hawkins,* 89 Wash. 449, 154 Pac. 827 (1916).

▮ If appellant had pleaded guilty to the amended information (as he told the trial court he would do), he presumably would have received the same maximum penalty as was imposed upon him by the court upon the jury's verdict of guilty of manslaughter. See RCW 9.48.060.

Furthermore, the jury had no knowledge of the existence of the amended information but determined that, on the basis of the testimony presented (including appellant's own testimony), he was not guilty of second-degree murder as charged in the original information but was guilty of the lesser included offense of manslaughter.

Under the circumstances of the present case as shown by the record, appellant has not convinced us that he suffered any prejudice as the result of the ruling of the trial court upon which he relies for reversal.

Furthermore, since appellant himself was the sole cause

of the alleged error upon which he relies for reversal, in our opinion, he is in no position to urge it on this appeal.

Appellant, having stated to the trial court that, acting on the advice of his counsel, he would plead guilty to a charge of manslaughter, led the prosecuting attorney to believe that, if an amended information charging only that crime were prepared and filed, the plan for terminating the case by his plea of guilty would be carried out by appellant. When that was done and appellant was arraigned on the amended information, he repudiated his previous consent to the plan and refused to plead guilty.

The prosecuting attorney then moved that the amended information be withdrawn and that the trial proceed on the original information. The trial court granted the motion and treated the amended information as withdrawn. The court stated that it would later hear from counsel on the matter, but that the trial on the original information (which had been interrupted for appellant's benefit) would proceed in the ordinary course.

While appellant had a right to change his mind as to pleading guilty to the manslaughter charge, he had no right to claim that what was done by the court and the prosecutor at his request and on the faith of his promise to plead guilty to the amended information constituted reversible error. He invited the situation of which he now complains, and he cannot urge that the conduct of the trial court and the prosecuting attorney which stemmed from compliance with his own request constituted reversible error.

As pointed out above, we are of the opinion that appellant has not shown that he has been prejudiced by the error assigned in his brief.

The judgment and sentence of the trial court is hereby affirmed.

ROSELLINI, C. J., WEAVER and HAMILTON, JJ., and REVELLE, J. Pro Tem., concur.